IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Kenneth B. Wallace Jr. (2019-0703231), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 19 C 5867 |
| | ) | |
| | ) | Hon. John J. Tharp, Jr. |
| Sanchez, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

The Court has reviewed Plaintiff's proposed amended complaint [10] and finds that it fails to state a viable federal claim. The amended complaint is dismissed, and the case is closed. This dismissal counts as one of Plaintiff's allotted dismissals (*i.e.*, strikes) for the purposes of 28 U.S.C. § 1915(g). Final judgment shall enter.

## STATEMENT

Plaintiff Kenneth B. Wallace Jr., a detainee at Cook County Jail, brings this *pro se* civil rights action claiming that in May 2018 Blue Island and Chicago police officers violated his constitutional rights by arresting him pursuant to an investigative alert. Currently before the Court is Plaintiff's amended complaint for initial review under 28 U.S.C. § 1915A.

Under 28 U.S.C. § 1915A, the Court is required to screen a prisoner's complaint and dismiss it, or any claims therein, if the complaint or claim is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against an immune defendant. *See Jones v. Bock,* 549 U.S. 199, 214 (2007); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Courts screen prisoners' complaints in the same manner they review motions to dismiss under Civil Rule 12(b)(6). *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). The statement also must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," which means that the pleaded facts must show there is "more than a sheer possibility that a defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When screening a *pro se* plaintiff's complaint, courts construe the plaintiff's allegations liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam). Courts also must "accept all well-pleaded facts as true and draw reasonable inference in the plaintiff's favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

The amended complaint alleges the following. In August 2017 Plaintiff had a telephone conversation with Officer Sanchez of the Chicago police department. (Dkt. 10, pg. 4-5.) Officer

Sanchez told Plaintiff that Plaintiff may have witnessed a crime being committed at a CTA bus stop. (*Id.*, pg. 4.) The Officer told Plaintiff that there was video footage of Plaintiff talking to a man who shortly thereafter entered a CTA bus and assaulted the bus driver. (*Id.*) Plaintiff told Officer Sanchez that this was impossible because he does not talk to strangers at bus stops. (*Id.*) Officer Sanchez ended the call by telling Plaintiff to stay out of trouble. (*Id.*) For the next approximately eight months, Officer Sanchez, as well as an Officer Williams, repeatedly called Plaintiff and his wife, stating that Plaintiff was under an investigation and that they would get a warrant for his arrest. (*Id.*, pg. 5.)

Then, in May 2018, the Blue Island Police department came to Plaintiff's house and arrested him in his front yard. (*Id.*, pg. 4-5.) They handcuffed Plaintiff and made him stand by the police car while they spoke with the 12th district to determine why they were arresting him, as they could not find an arrest warrant in the data base. (*Id.*, pg. 5.) After 20 or 30 minutes, they told Plaintiff that the Chicago Police Department said there is an investigative alert out for his arrest. (*Id.*) Plaintiff was taken to the Blue Island Police Department without a formal booking or without being read his rights. (*Id.*) He was there for a couple of hours when the Chicago Police Department then picked him up and held him for a few more hours. (*Id.*) Officer Sanchez then charged Plaintiff with burglary to an auto eight months after the crime was supposed to have occurred. (*Id.*) According to Plaintiff, the Blue Island Police Department violated his rights "because they did not have any info as to why they was arresting me when they got to my yard . . . they did not even have the slightest idea of why they was taking me to their jail." (*Id.*) As Defendants, Plaintiff names Detective Sanchez, an unnamed Blue Island police officer, and the "City of Blue Island/City of Chicago."

Even accepting Plaintiff's factual allegations as true, the Court finds that the amended complaint fails to state a cognizable federal claim as a matter of law. Plaintiff has not stated facts showing that his arrest pursuant to an investigative alert violated his federal rights.

The Court recognized in its prior screening order that the Illinois Appellate Court recently held that "arrests based solely on investigative alerts, even those supported by probable cause, are unconstitutional under the Illinois Constitution." *People v. Bass*, — N.E.3d —, 2019 WL 3416838 (Ill. App. Ct. July 25, 2019), *modified on denial of reh'g*, 2019 WL 4854030, at *7 (Ill. App. Ct. Sept. 30, 2019). But even if Plaintiff's warrantless arrest violated state law or the Illinois Constitution, Plaintiff cannot proceed under § 1983 based on a violation of state law. *See, e.g., Scott v. Edinburg,* 346 F.3d 752, 760 (7th Cir. 2003); *Archie v. City of Racine,* 847 F.2d 1211, 1216-17 (7th Cir. 1988). The *Bass* Court based its holding on the specific wording of the *Illinois* Constitution and its requirement that probable cause be supported by an affidavit, which it found goes a "step beyond" the requirements of the U.S. Constitution. *Id.* at *1. The Court went on to observe that "[i]t is well-settled that the [F]ourth [A]mendment allows for warrantless arrests outside the home as long as the police have probable cause to arrest the suspect." *Id.* at *6. Thus, if the facts laid out in an investigative alert are sufficient to provide probable cause, then the arrest does not violate the Fourth Amendment of the federal Constitution. *Id.*

In other words, as the Court explained to Plaintiff in its prior screening order, he may

2

pursue relief under Section 1983 only if he can establish that the police violated the Fourth Amendment by arresting him without probable cause. "Probable cause exists if, at the time of the arrest, the facts and circumstances within the defendant's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed ... an offense." *Muhammad v. Pearson*, 900 F.3d 898, 907-08 (7th Cir. 2018) (citations omitted). The existence of "[p]robable cause is an absolute bar to a claim of false arrest asserted under the Fourth Amendment and section 1983." *Id.* (citations omitted).

Generally, a properly lodged investigative alert satisfies the Fourth Amendment's probable cause requirement. An investigative alert is a tool used by police to alert other police officers that an offender is wanted for a crime, should that offender happen to be stopped by other officers. *Sanders v. Cruz*, No. 08 CV 3318, 2010 WL 3004636, at *3 (N.D. Ill. July 29, 2010). "An investigative alert informs police officers who come into contact with a suspect (perhaps on a traffic stop) that there is probable cause to arrest the subject, and the suspect can be arrested without a warrant after the alert is issued." *Craig v. City of Chicago*, No. 08 CV 2275, 2011 WL 1196803, at *3 (N.D. Ill. Mar. 25, 2011).

The Court's prior screening order specifically instructed Plaintiff that he must demonstrate that his arrest lacked probable cause in order to state a claim, but the new factual narrative of the events leading up to Plaintiff's arrest fails to raise that inference. There are no facts in the amended complaint tending to show that the circumstances did not justify the arrest. Plaintiff's claim instead is that his arrest was unlawful merely because the Blue Island (*i.e.*, arresting) officers were unaware of the basis for the investigative alert issued by Officer Sanchez. This legal theory is simply incorrect. An investigative alert falls under the "collective knowledge" doctrine. *Trice v. Lara*, No. 15 CV 1203, 2017 WL 449174, at *6 (N.D. Ill. Feb. 2, 2017). "The collective knowledge doctrine permits an officer to stop, search, or arrest a suspect at the direction of another officer or police agency, even if the officer himself does not have firsthand knowledge of facts that amount to the necessary level of suspicion to permit the given action." *United States v. Kelvin*, 627 F.3d 247, 252 (7th Cir. 2010) (citing *United States v. Hensley*, 469 U.S. 221, 232-33 (1985)); *see also Banks v. Fuentes*, 545 F. App'x 518, 521 (7th Cir. 2013) (unpublished opinion) ("Like a warrant, the investigative alert authorized [plaintiff's] arrest because other officers already had made a determination of probable cause"); *Sims v. Cty. of Cook*, No. 16 CV 10816, 2016 WL 7157366, at *3 (N.D. Ill. Dec. 7, 2016) (same); *Turner v. City of Chicago*, No. 12 CV 9994, 2015 WL 7568373, at *5 (N.D. Ill. Nov. 25, 2015) (same).

The Court additionally observes that Plaintiff has not articulated a tenable Fifth Amendment claim under *Miranda v. Arizona*, 384 U.S. 436, 445 (1966). In *Miranda*, the Supreme Court announced several Fifth Amendment safeguards, including the need to advise a suspect of his or her right to remain silent, and the requirement that law enforcement officers honor that right, *id.* at 479, and Plaintiff alleges that he was "not read his rights." But the failure to provide such warnings does not, by itself, constitute a stand-alone violation of the Fifth Amendment. *See Chavez v. Martinez,* 538 U.S. 760, 766-70 (2003) (plurality opinion); *Hanson v. Dane Cnty., Wis.,* 608 F.3d 335, 339-40 (7th Cir. 2010). Rather, the State violates a suspect's privilege against self-incrimination only if it introduces the unwarned statement into evidence in pretrial or trial proceedings. *Sornberger v. City of Knoxville, Ill.,* 434 F.3d 1006, 1026-27 (7th Cir. 2006); *see also*

*Stoot v. City of Everett,* 582 F.3d 910, 925 (9th Cir. 2009); *Higazy v. Templeton,* 505 F.3d 161, 171-73 (2d Cir. 2007). Absent such use, there is no constitutional violation, even when the government has initiated a criminal prosecution based on the statement. *Hanson,* 608 F.3d at 339-40; *Burrell v. Virginia,* 395 F.3d 508, 513-14 (4th Cir. 2005). Here Plaintiff does not indicate that he was even interrogated, let alone that he made any statements against his self-interest or that they were used against him. Plaintiff has alleged no cognizable constitutional violation pursuant to *Miranda*.

In sum, Plaintiff's amended complaint fails to state a claim upon which relief may be granted. Plaintiff has been given a chance to amend his complaint with explicit instructions as to how to plead a cognizable claim, and it appears that he has put forth his best case as to how his rights were allegedly violated. Allowing further amendment would be futile. Therefore, the federal claims in the amended complaint are dismissed with prejudice. Any state law claims are dismissed for want of jurisdiction under 28 U.S.C. § 1367(c)(3), and Plaintiff is free to bring them in state court, subject to any applicable defenses.

The dismissal of this suit counts as one of Plaintiff's three allotted dismissals under 28 U.S.C. § 1915(g). If he accumulates three dismissals under § 1915(g), he will be unable to file a federal complaint or appeal without prepaying the filing fee unless he demonstrates he is in imminent danger of serious physical injury. *See* § 1915(g). An inmate who has accumulated three such dismissals must notify a court of that fact when he initiates a new lawsuit. *Ammons v. Gerlinger*, 547 F.3d 724, 725 (7th Cir. 2008).

Final judgment shall enter. If Plaintiff wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. See Fed. R. App. P. 4(a)(1). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. See *Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, Plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Ibid.* If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court. See Fed. R. App. P. 24(a)(1). This case is terminated.

Date:   January 7, 2020                              /s/   John J. Tharp, Jr.
                                                     John J. Tharp, Jr.
                                                     United States District Judge